UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL YOON,

    Plaintiff,

    v.

FIRST UNUM LIFE INSURANCE, et al.,

    Defendants.

_____/

No. C 09-2529 PJH

**ORDER GRANTING MOTION TO DISMISS**

Defendants' motion for an order dismissing the complaint for failure to state a claim came on for hearing before this court on August 12, 2009. Plaintiff Daniel Yoon appeared by his counsel E. Gerrard Mannion, and defendants First Unum Life Insurance Company, Unum Provident Corporation, and Unum Group, Inc. ("First Unum") appeared by their counsel Kevin Gill. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS the motion.

**BACKGROUND**

Plaintiff was an insured under a group long-term disability insurance plan ("the Plan") established and maintained by his former employer, McKinsey & Company, Inc. ("McKinsey") for its eligible employees. McKinsey obtained the Plan from defendant First Unum Life Insurance Company ("First Unum"), and is the "policyholder."

The Plan describes two eligible classes of employees, and states that employee contributions are required for Class 1, but not for Class 2. Class 1 includes "all Management Group Members" and "all other Employees excluding "the non-Management Group Members of Netherlands branch, all Management Group Members of the Sweden office . . . and any temporary or seasonal employees." Class 2 includes "all non-Management Group members employees of the Netherlands branch."

The Plan provides further that First Unum may terminate the policy "on any premium due date by giving written notice to the policyholder at least 31 days in advance" if the number of employees insured is fewer than 10, if fewer than 100% of the employees eligible for any noncontributory insurance are insured for it, or if fewer than 75% of the employees eligible for any contributory insurance are insured for it. Put another way, the Plan has a minimum participation level of 75% for contributory (Class 1) employees, and 100% for noncontributory (Class 2) employees. All Class 2 employees are required to participate, and McKinsey pays the premiums for all Class 2 employees.

The Plan states that the duty to pay premiums rests with the employer, McKinsey. Defendants assert that McKinsey maintains the Plan by providing enrollment forms to its employees, requiring 75% participation for Class 1 employees and 100% participation for Class 2 employees, collecting the premium for Class 1 employees, and submitting claims for benefits and otherwise acting as a go-between for its employees and First Unum.

Plaintiff was an employee of McKinsey when he enrolled in the Plan on April 14, 1995. He was still an employee of McKinsey, and participating in the Plan, when he was injured in 1995. McKinsey submitted plaintiff's application for disability benefits to First Unum on June 4, 1996. Plaintiff began receiving benefits in 1996, and continued to receive them until May 2009, when First Unum determined that he was no longer totally disabled.

After plaintiff's administrative appeal was denied, he filed the present action, asserting causes of action for breach of contract (breach of the group disability insurance policy), and breach of the implied covenant of good faith and fair dealing. He seeks a jury trial, plus compensatory damages and punitive and other extra-contractual damages, and

2

attorney's fees and expenses.

Plaintiff filed the original complaint in the Superior Court of California, County of Alameda, on May 8, 2009. Defendants removed the action on June 8, 2009, asserting federal question jurisdiction under the Employment Retirement Income Security Act of 1974 ("ERISA"). On June 29, 2009, defendants filed the present motion.

Defendants seek an order dismissing the state law causes of action for failure to state a claim. In the alternative, defendants seek summary judgment, affirming that the Plan is governed by ERISA, that plaintiff is not entitled to a jury trial, and that plaintiff's potential remedies are limited to those provided by ERISA (recovery of "benefits due").

## DISCUSSION

A.  Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8(a)(2) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Specific facts are unnecessary – the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). All allegations of material fact are taken as true. Id. at 94. However, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

A motion to dismiss should be granted if the complaint does not proffer enough facts

to state a claim for relief that is plausible on its face.  See id. at 558-59.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (9th Cir. 2009).

B.    Defendants' Motion

Defendants argue that the Plan is governed by ERISA because it was established by McKinsey to provide its employees with benefits in the event of disability.  Thus, defendants assert, it is an ERISA employee benefit plan.  Defendants also assert that the Plan does not fall within ERISA's "safe harbor" exclusion.

ERISA preempts claims based on state laws that "relate to any employee benefit plan."  29 U.S.C. § 1144(a).  ERISA defines an "employee benefit plan" to include, among others, "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ."  29 U.S.C. § 1002(1), (3).

Even if an employer does no more than arrange for a "group-type insurance program," it can establish an ERISA plan, unless the plan meets the requirements for exclusion from ERISA.  Credit Managers Ass'n of So. Calif. v. Kennesaw Life and Acc. Ins. Co., 809 F.2d 617, 625 (9th Cir. 1987) (citing 29 C.F.R. § 2510.3-1(j)); see also Crull v. GEM Ins. Co., 58 F.3d 1386, 1390 n.2 (9th Cir. 1995).

A benefit plan can fall outside the coverage scope of ERISA if it meets all four requirements under the U.S. Department of Labor's so-called "safe-harbor" regulation – 29 CFR § 2510.3-1(j) – which distinguishes plans "established or maintained by an employer" from those in which the employer's role is sufficiently limited so as to not qualify as an ERISA employee benefit plan.

The regulation excludes those plans in which

> (1) No contributions are made by the employer or an employee organization;

4

> (2) Employee participation is completely voluntary;
>
> (3) The sole functions of the employer . . . are, without endorsing the program, to permit the insurer to publicize the program to employees . . . to collect premiums through payroll deductions or dues checkoffs[,] and to remit them to the insurer;" and
>
> (4) The employer receives no consideration for its limited involvement in the plan, other than a reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

Qualls v. Blue Cross of California, Inc., 22 F.3d 839, 843 (9th Cir. 1994) (citing 29 CFR § 2510.3-1(j)).

"An employer's failure to satisfy just one requirement of the safe harbor regulation conclusively demonstrates that an otherwise qualified group insurance plan is an employee welfare benefit plan under ERISA." Stuart v. UNUM Life Ins. Co. of America, 217 F.3d 1145, 1151-52 (9th Cir. 2000). In this case, defendants assert that the Plan is an ERISA plan because it fails to satisfy at least three of the four requisites of the "safe harbor" regulation.

First, defendants argue that the Plan also fails to satisfy the "contributions" requirement, because under the terms of the Plan, McKinsey makes 100% of the contributions for Class 2 employees.

Second, defendants contend that employee participation is not completely voluntary, as the Plan has a minimum participation requirement (referring to the provision pursuant to which McKinsey can terminate the policy if employee participation falls below 100% for Class 2 employees, and 75% for Class 1 employees). Because of these mandatory participation requirements, defendants argue, the employee's participation cannot be said to be "completely voluntary."

Third, defendants contend that because McKinsey has a role in the administration of the Plan – it functions as the policyholder (under the terms of the Plan) and performs numerous administrative duties (making payroll deductions, distributing Plan information to employees, distributing and completing Plan enrollment forms, instructing employees re

5

filling out and submitting Plan documents, notifying employees re changes in the Plan) – the Plan does not satisfy the "functions of the employer" requirement of the "safe harbor" regulation.

In support of its claim that McKinsey performs numerous administrative duties, defendants refer to Plan documents, and to the enrollment form that plaintiff submitted at the time he was hired, in which he declined life insurance, and dependant medical and dental coverage, and accepted accidental death and dismemberment insurance and long-term disability insurance.

Defendants do not address the fourth requirement of the regulation – the provision that the employer can receive no consideration for its limited involvement in the Plan.

In opposition, plaintiff asserts that defendants have not met their burden of establishing that the Plan does not fall within the "safe harbor" provision. First, plaintiff contends that defendants have not established that McKinsey makes any contributions. He asserts that he paid 100% of the premiums for his insurance, and argues that there is no evidence that there have ever been any Class 2 employees (or even any "Netherlands branch"), and no evidence that McKinsey has ever made any payments for them.

Second, plaintiff argues that defendants have not proven that participation in the Plan is not voluntary. He asserts that the Plan's "termination" provision cannot be considered evidence that participation in the Plan is not voluntary, as the 100% and 75% participation requirements are simply "benchmarks" the insurer can use to terminate coverage if it wants to do so. Plaintiff claims that the employer has no say in the matter, and is not requiring the employees to do anything.

Plaintiff also argues that defendants have provided no evidence that the alleged participation levels were monitored or actually relevant; that the percentages in the insurer's "option" affected whether any of the employees joined the plan; that the percentages made any difference whatsoever in the existence or continuation of the plan; or that the insurer's "option" affected the employer, or the employer's relations with the employees, in any way. Plaintiff asserts that there is not even any evidence from the

defendants that there are any employees in the Plan, of any class, other than plaintiff.

Plaintiff asserts that by contrast, he has established that participation in the Plan was completely voluntary. He has provided a declaration in which he states that it was his understanding that participation was voluntary; that his employer did not encourage or recommend that any employee sign up for the LTD coverage; and that the McKinsey benefits coordinator with whom he spoke on the phone confirmed that participation was voluntary, and that McKinsey did not market or sponsor the Plan, and also confirmed that he (plaintiff) had paid 100% of the premiums.

Third, plaintiff argues that defendants have provided no evidence that McKinsey performs numerous administrative duties. Plaintiff notes defendants have cited only to the Plan and the form that plaintiff signed at the time of hiring indicating which benefits he was opting for. Plaintiff argues, however, that the complaint and the benefits form do not detail any administrative tasks that fall outside the safe harbor. Plaintiff asserts that those documents show only that McKinsey performed minimal types of administrative tasks, and that such a showing is insufficient to remove the Plan from the safe harbor.

Fourth, plaintiff asserts that there is no evidence that McKinsey received any compensation or benefit from First Unum, other than for administrative services. In his declaration, plaintiff states that McKinsey's benefits coordinator confirmed to him in a telephone conversation that McKinsey received no compensation or other benefit for allowing employees to choose First Unum as the LTD benefits carrier.

Plaintiff makes two additional arguments. First, he asserts that if the court has any question as to the applicability of the "safe harbor" provision, it should permit discovery on the issue. Second, plaintiff contends that if the court is inclined to grant either the motion to dismiss or the motion for summary judgment, it should give plaintiff leave to amend to state a claim under ERISA.

The court finds that the motion to dismiss must be GRANTED, without any necessity of converting it to a motion for summary judgment. Under Sgro v. Danone Waters of North America, Inc., 532 F.3d 940 (9th Cir. 2008), the Plan is subject to ERISA unless plaintiff

can plead and prove that his employer, McKinsey, satisfied each of the four requirements of the "safe harbor" regulation. See id. at 942-43 (for plaintiff to prevail on his claims that the plan at issue falls within the "safe harbor" regulation, "he would have to prove that the plan meets four separate requirements of the regulation").

Here, the complaint does not plead that McKinsey did not satisfy the "safe harbor" requirements, but that is not fatal to plaintiff's claim. However, under the terms of the Plan, McKinsey clearly makes employer contributions. The Plan unambiguously provides that no employee contributions are required from the Class 2 employees. In other words, McKinsey contributes all premiums for their coverage. Thus, the Plan cannot qualify for the "safe harbor" under subsection (1) of the regulation. Thus, it is an ERISA plan, and the state law claims for breach of contract and breach of the implied covenant must be dismissed.

The court finds it unnecessary to consider the other three provisions of the "safe harbor" regulation, as defendants can prevail if they establish that the Plan fails to satisfy only one of the four requirements. The court notes, however, that under the terms of the Plan, enrollment is not completely voluntary for all employees, as the Plan provides that First Unum can cancel the policy if fewer than 100% of the Class 2 employees sign up for LTD coverage, or if fewer than 75% of Class 1 employees sign up for it. Thus, it is unlikely that the Plan can meet the requirement in subsection (2) of the "safe harbor" regulation.

In addition, because the Plan was apparently designed to satisfy McKinsey's specific requirements for insurance both in the U.S. and in Europe, and because the design of the Plan shows that McKinsey played an active, central role in creating and designing the Plan, and also contributed premiums for certain classes of employees, it is unlikely that the Plan can meet the requirement in subsection (3) of the "safe harbor" regulation.

Finally, plaintiff's request for leave to file an amended complaint alleging a claim for denial of benefits under ERISA is GRANTED.

**CONCLUSION**

In accordance with the foregoing, the motion to dismiss the complaint is GRANTED,

with leave to amend to state a claim for unlawful denial of benefits under ERISA. The amended complaint must be filed no later than September 17, 2009.

As the court has not relied on any of the disputed evidence, defendants' objections to evidence are OVERRULED, and their motion for an order striking portions of plaintiff's declarations is DENIED.

**IT IS SO ORDERED.**

Dated: August 20, 2009

　　　　　　　　　　　　　　　　　　　　　　　　PHYLLIS J. HAMILTON
United States District Judge